**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| TRAVIS BLANK, | § | |
| (BOP No. 16486-078) | § | |
| V. | § | CIVIL ACTION NO. 4:14-CV-502-O |
| | § | |
| UNITED STATES OF AMERICA, et al. | § | |

**OPINION AND ORDER OF PARTIAL DISMISSAL OF ALL REMAINING CLAIMS
AGAINST INDIVIDUAL DEFENDANTS UNDER 28 U.S.C. § 1915A(b)**

This case is before the Court for review of pro-se Plaintiff Travis Blank's remaining claims against former Warden Rebecca Tamez, Assistant Warden Susan Fick, Medical Director Ferguson, and Clinical Director Butch Tubera, and his claims under the FTCA, under the screening provision of 28 U.S.C. § 1915A. Having reviewed and screened the remaining claims against the individual government defendants as asserted in the complaint and second more definite statement, the Court concludes that all remaining claims against the individual defendants must be dismissed under the authority of § 1915A(b)(1).[1]

## I.   BACKGROUND

Plaintiff Blank, an inmate at the Bureau of Prisons FCI-Fort Worth facility, filed an original complaint naming numerous defendants on claims arising from the medical care provided to him. Compl. 1-8, ECF No.1. The Court already dismissed, under the authority of 28 U.S.C. 1915A(b), all claims against the individual defendants in an official capacity, all claims against Regional Director Keller, FCI-Oakdale Warden Young, and FCI-Oakdale Medical Director Merritt, and all claims against the remaining individual defendants (Tamez, Fick, Ferguson, and Tubera) that occurred before June 16, 2012, the date two years before suit was filed. Order, ECF No. 13.  All of the

---

[1] The Court will allow summonses to be issued and served upon defendant United States of America with regard to Blank's claims under the Federal Tort Claims Act (FTCA), by separate order issued this same day.

individual capacity claims for facts arising before that date were dismissed as barred by the applicable two-year statute of limitations. The Court, by order entered July 10, 2015, determined that the more definite statement filed on February 10, 2015, would not be considered but allowed Blank to file an amended more definite statement. Order, ECF No. 23.   Plaintiff has since filed a second more definite statement. Second More Definite Statement (Sec. MDS), ECF No. 24. Thus, the Court now completes the § 1915A review and screening of the remaining claims in the original complaint and second more definite statement.

Plaintiff claims that the remaining defendants violated his rights under the Eighth Amendment by knowingly and intentionally withholding medication and other medical treatment for his known serious medical condition, Crohn's disease. Compl. 5-7, 27-29.   He also alleges that each of the remaining defendants was aware that gross overcrowding at FCI-Fort Worth facility led to a backlog and delay in providing medial care but condoned and allowed such gross overcrowding. *Id.* at 31-34, 35-36; Sec. MDS, 5-12. He seeks a declaratory judgment and monetary damages. Compl. 37.

## II.    LEGAL STANDARD

As a part of the Prison Litigation Reform Act ("PLRA"), Congress enacted 28 U.S.C. § 1915A, which requires a district court to review a complaint from a prisoner seeking relief from a governmental entity, officer, or employee as soon as possible after docketing. *See* 28 U.S.C.A. § 1915A(a) (West 2006). This provision is separate from the screening provision applicable to in-forma-pauperis proceedings and it provides that after the review required under § 1915A(a), the Court shall dismiss the complaint or any portion thereof, if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C.A. § 1915A(b)(1) and (2)(West 2006). Consistent with § 1915A is prior case law recognizing that a district court is not required to await a responsive pleading to conduct its §

1915 inquiry.  *See Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir. 1995) (recognizing that a district

court is not required to await a responsive pleading to conduct its § 1915 inquiry).  Rather, § 1915

gives judges the power to "dismiss a claim based on an indisputably meritless legal theory." *Id.* (citing

*Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

### III.   ANALYSIS

#### A.   No Personal Involvement

The Supreme Court, in *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

*Narcotics ("Bivens")*, recognized an individual's right to seek recovery for violation of constitutional

rights by a person acting under color of federal law. 403 U.S. 388, 297 (1971). The *Bivens* decision

is the counterpart to 42 U.S.C. § 1983, and extends the protections afforded under § 1983 to parties

injured by federal actors. *See Evans v. Ball,* 168 F.3d 856, 863 n. 10 (5th Cir. 1999) ("A *Bivens* action

is analogous to an action under § 1983--the only difference being that § 1983 applies to constitutional

violations by state, rather than federal officials"*), overruled on other grounds, Castellano v. Fragozo,*

352 F.3d 939, 948-49 & n. 36 (5th Cir. 2003).  Plaintiff asserts his claims for individual liability under

*Bivens.*

Although Blank has named Rebecca Tamez as an individual defendant, he has recited no facts

to relate any personal actions of Tamez to the allegations made the basis of his complaint. In order

to state a *Bivens* claim, the claimant must allege personal involvement of a defendant.

*Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 833 (5th Cir. 2004). Federal officials cannot be held

vicariously liable for the acts of subordinates under the doctrine of respondeat superior. *Cronn v.*

*Buffington*, 150 F.3d 538, 544 (1998) (citing *Abate v. Southern Pac. Transp. Co.,* 993 F.2d 107, 110

(5th Cir. 1993)). Without personal involvement or participation in an alleged constitutional violation,

the individual should be dismissed as a defendant. *Cronn*, 150 F.3d at 544 (citing *Thompkins v. Belt,*

3

828 F.2d 298, 304 (5th Cir. 1987)).

Here, Plaintiff writes that "Rebecca Tamez was the one with sole authority over the population at FCI-Fort Worth, which was, and is, grossly overcrowded." Sec. MDS at 6. But in response to a question about her personal involvement, Plaintiff wrote

> Defendant Warden Rebecca Tamez was directly and personally involved in the violating of my Eighth Amendment rights, due to the gross overcrowding that she was condoning and encouraging. The gross overcrowding was detrimentally affecting Plaintiff from receiving timely and adequate medical care, for his known serious disease and medical needs. Defendant as Warden signed any and all of Plaintiff's administrative remedies, as well as other administrative remedies filed by other inmates pertaining to the gross overcrowding, and gross delay in medical care.

Sec MDS, 7. As Blank has not alleged any particular facts that Tamez was specifically involved in the decisions regarding his medical care or the delivery of medical care to him, he has not stated a viable individual liability claim under *Bivens* for violation of the Eighth Amendment, and any such claim against Rebecca Tamez must be dismissed.[2]

## B.    Deliberate Indifference to Serious Medical Needs

Deliberate indifference to a prisoner's serious medical needs has been deemed to amount to cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976). Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants." *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985) (also

---

[2] Allegations of inadequate processing of a grievance do not support a constitutional violation. As the Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers:* "[ An inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As this claim relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002) ("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation")(citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996)). Thus, to the extent Blank's allegation that Tamez denied a grievance alleges personal involvement in an unspecified due process claim fails, as that allegation does not state a due process violation.

noting that the Supreme Court defined wantonly to mean "causelessly, without restraint, and in reckless disregard of the rights of others") (citing *Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983)); *see also Wilson v. Seiter,* 501 U.S. 294, 297 (1991). This subjective deliberate-indifference standard is equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Hare v. City of Corinth,* 74 F.3d 633, 648 (5th Cir. 1996) (*en banc*), *opinion after subsequent remand,* 135 F.3d 320, 327 (5th Cir. 1998). Consistent with this standard is the recognition that negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil-rights action. *See Estelle,* 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *see also Varnardo v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (unsuccessful medical treatment, neglect, nor medical malpractice give rise to a § 1983 cause of action) (citations omitted).

Plaintiff alleges that Assistant Warden Fick was personally aware of the delay in him seeing specialists and his ongoing complaints of pain. Sec. MDS 8. As to Hospital Services Administrator Grace Ferguson and Clinical Director Butch Tubera, Plaintiff alleges specific instances when each of these persons was aware of his complaints regarding the timeliness of appointments with a GI specialists, and his complaints of the administration of and need for additional medications. Sec. MDS 10-11, 12-13. He also alleges that both defendants Ferguson and Tubera had authority to approve and expedite the provision of medical care he believed was necessary. *Id.*

-5-

Plaintiff's pleadings recount, however, the numerous instances in which he was seen by medical providers related to his complaints of gastrointestinal (GI) symptoms and Crohn's disease:[3]

- May 3, 2012 - Sick Call with Mr. Felicano;
- May 8, 2012 - Sick Call with Mr. Feliciano;
- May 16, 2012- Appointment with Dr. Baruti--Crohn's medicine administered to Plaintiff by Dr. Baruti; Compl. 19;
- May 18, 2012 - Sick Call inquiry regarding vitamin D and Ensure;
- May 30, 2012 - Crohn's medicine administered to Plaintiff but he suffers reaction; Compl. at 19;
- June 1, 2012 - Sick Call inquiry regarding vitamin D and Ensure;
- June 7, 2012 -  Appointment with Dr. Baruti;
- June 19, 2012 - Sick Call with Mr. Feliciano for GI symptoms and pain;
- June 25, 2012 -Sick Call with Mrs. Krayer regarding how medication was being administered;
- June 27, 2012 - Crohn's medicine administered but he has reaction; Compl. at 20;
- June 29, 2012 - Sick call with Mr. Feliciano for GI Symptoms
- July 9, 2012 - Appointment with GI specialist who provides direction on rate medications administered; Compl. 21.
- July 10, 2012 - Sick call with Mrs. Krayer as to obtaining correct medicines and doses;
- July 30, 2012 - Sick call with Mr. Brockman as to GI pain and symptoms;
- August 15, 2012 - Sick call Mrs. Krayer for GI pain and symptoms;
- August 22, 2012 - Appointment with Dr. Baruti regarding ongoing issues with his symptoms and reactions to medication;
- August 29, 2012- Crohn's medications delivered "correctly and Plaintiff has no reaction when Crohn's medication is administered, as it is also administered at a slower rate;" Compl. at 22;
- September 14, 2012 - Sick call with Mr. Feliciano regarding GI pain and symptoms
- September 20, 2012 - Appointment with Dr. Baruti who advised must wait for GI specialist consultation;
- October 1, 2012- Appointment with GI specialist who prescribes a new medication to supplement existing medications; Compl. 23;
- November 15, 2012- Appointment with Dr. Baruti and Dr. Baruti then orders the medication suggested by GI specialist;
- November 21, 2012- Appointment with Dr. Baruti regarding possible allergic reaction to new medication;
- December 7, 2012- Sick call with Mrs. Krayer for GI pain and symptoms;
- January 2, 2013 - Sick call with Mr. Naeem for Gi pain and symptoms;
- January 4, 2013 - Sick call with Mrs. Krayer for GI pain and symptoms;
- January 14, 2013- Appointment with GI specialist who again adjusts the recommended medications;
- January 28, 2013 - Sick call with Mrs. Krayer re GI pain and symptoms;
- February 1, 2013 - Appointment with Dr. Baruti who approves medications as suggested by GI

---

[3]All of the dates and events in this medical care chronology are from the second more definite statement (pages 16-21) except where indicated.

specialist on January 14, 2013;
- February 8, 2013 - Sick call with Mrs. Krayer for GI pain and symptoms;
- April 8, 2013 - Appointment with GI specialist who again prescribes change of dosage of Crohn's medications;
- May 9, 2013 - Appointment with Dr. Baruti requesting further medication changes and requesting another GI specialist consultation;
- June 2, 2013 - Sick call with Mrs. Krayer for GI pain and symptoms;
- June 3, 2013 - Appointment with GI specialist who again increases dosage of Remicade to maximum level to treat his Crohn's disease;
- July 6, 2013 - Appointment with nurse Barkman for GI pain and symptoms;
- September 9, 2013 - Appointment with Dr. Baruti at which time Blank acknowledges to Dr. Baruti that "medicines and doses appear to be working."

This review shows that Plaintiff Blank was repeatedly seen by medical care providers at FCI-Fort Worth. Blank acknowledges that over the course of late May 2012 through early September 2013, he saw medical staff personnel on 17 instances. In addition, he acknowledges that he saw Dr. Baruti ten times, and he acknowledges that he had appointments with an outside GI specialist on five occasions. This record shows that he was being repeatedly seen by medical personnel regarding his complaints of GI pain, and was repeatedly being given different medication protocols to attempt to address his medical condition, and to attempt to address his reactions to different medications and amounts of medication provided to him. Thus, Plaintiff's claims against all remaining individual defendants involve only disagreements among physicians and medical care providers on the proper course of care and what medical care was necessary. Such disagreement between an inmate and his physicians as to what medical care is appropriate does not state a claim for Eighth Amendment indifference to medical needs. *See Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997) (affirming the dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment); *see also Banuelos v. McFarland,* 41 F.3d 232, 235 (5th Cir. 1995) (disagreement between inmate an his physicians what medical care is appropriate actionable

only under exceptional circumstances) (*citing Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991).

### C.   Overcrowding

Plaintiff repeatedly alleges that gross overcrowding, and the defendants awareness of such overcrowding, amounted to a violation of his Eighth Amendment rights. Prison officials must provide humane conditions of confinement, including "adequate food, clothing, shelter, and medical care." *Farmer,* 511 U.S. at 832 (1994); *Helling v. McKinney,* 509 U.S. 25, 31 (1993) ("The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment"). Overcrowding in and of itself is not necessarily unconstitutional, but if overcrowding causes an inmate to be denied the minimal civilized measure of life's basic needs, then this could form the basis of an Eighth Amendment violation. *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991). Although Plaintiff makes conclusory allegations that overcrowding at FCI-Fort Worth caused delays in medical care, he does not recite facts that relate his allegations of overcrowding to the delay in providing medical care provided to him for his particular condition. He does not state the "unusual case in which a specific act could be attributed to the effects of overcrowding." *Marsh vv. Barry,* 824 F.2d 1139, 1145 (D.C. Cir. 1987) (citing *Morgan v. District of Columbia*, 824 F.2d 1049 (D.C. Cir. 1987)). Thus, Plaintiff's distinct claim that the remaining defendant's violated his Eighth Amendment rights to medical care due to overcrowding, must be dismissed.

## IV.   CONCLUSION

It is therefore **ORDERED** that all Plaintiff's remaining claims against individual defendants former Warden Rebecca Tamez, Assistant Warden Susan Fick, Medical Director Ferguson, and Clinical Director Butch Tubera are **DISMISSED WITH PREJUDICE** under 28 U.S.C. §

1915A(b)(1).[4]

        **SO ORDERED** this **5th day** of **January, 2016.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[4]Plaintiff filed a motion to rule on the merits. ECF  No. 25.  To the extent that motion sought this review under 28 U.S.C. § 1915A, it is **GRANTED**, and in all other respects, it is **DENIED**.